## THE UNITED STATES v. AMBROSE and others.*

*(Circuit Court, S. D. Ohio.   May, 1880.)*

CLERK OF U. S. COURT — BOND OF — DUTY TO ACCOUNT. — 1. The condition in a bond given by a clerk of a United States Court, that he would faithfully account for all moneys coming into his possession as such clerk, did not enlarge the obligation of the bond required by statute. The accounting for moneys in his hands as clerk was one of the duties for the faithful performance of which he was required by statute to give bond, and the specification of one of the details covered by the general obligation does not affect the validity of the bond he was required to execute.

SAME—SAME—DECLARATION IN ACTION FOR BREACH.—2. A declaration alleging as a breach of such bond a failure to make the proper returns and *pay over surplus funds* is good, although the breach alone consists in a failure to make the proper returns. The additional allegation of a failure to pay over may be treated as surplusage, or as indicating the measure of damages on a failure to make such returns.

This suit is on the official bond of the defendant Ambrose, as clerk of the United States circuit court, for failing to make return of all his fees and emoluments. The defendants answered that the attorney general required him to give the bond sued on containing a condition not required by statute, and that said bond having been thus extorted under color of office was void. The answer was in form the same as the plea in case of *U. S.* v. *Tingly,* 5 Pet. 115, upon which the defence relied. To this answer the district attorney demurred.

The statute (act of February 22, 1875, 18 St. at Large, 333) authorizes the attorney general to require a clerk to give bond conditioned that he will faithfully discharge the duties of his office. The bond in suit is conditioned that he will faithfully discharge the duties of his office, and in addition thereto that he will faithfully account, as required by law, for all moneys that may come into his hands.

*Channing Richards,* U. S. Dist. Atty., for plaintiff.

*George Hoadly, H. A. Morrill* and *George R. Sage,* for defendants.

SWAYNE, J.   The statute which lies at the foundation of

*Prepared by Messrs. Florien Giauque and J. C. Harper, of Cincinnati, O.

this controversy requires the bond of the clerk to be conditioned "to faithfully discharge the duties of his office and seasonably record the decrees, judgments and determinations of the court." That is the entire ground covered by the statute.

The additions required to be made, and in fact made, to the bond in question, are, *in limine*, the first sentence of the condition, "that he shall, by himself and by his deputies, faithfully perform," etc., following the language of the statute; and then the last clause, which is not required in terms by the statute, is in these words: "And shall properly account for all moneys that may come into his possession, as required by law."

Now, as regards the first superadded matter which relates to the deputy clerk, the statute in force when the bond was given authorizes the court to require a bond to be given by the deputy clerk for the faithful performance of his duties, but that same section (No. 796 of the Revised Statutes, 149,) expressly declared that the security so taken for the fidelity of the deputy clerk, in the respect of his duties, should not in anywise affect the liability of the clerk himself; hence it seems to me too clear to admit of controversy that this phraseology as to deputy clerks, as was suggested in the argument, is entirely supererogatory. It is certainly surplusage, and therefore ineffectual for any purpose, especially as it regards affecting or destroying the validity of the bonds.

It was said in argument (and I was struck with it at the time as possibly suggesting a point very material to be considered, but I came, ultimately, to the above conclusion) that this comprehensive language might involve a guaranty for the clerk in respect to things that he could not be competent to do. But my own reflections suggest an answer to that view of the case, to-wit, that the language employs this phraseology, and the consequent intendment to be deduced by the court from that language is that no other duty on the part of the clerk was contemplated, or intended to be in any wise guarantied, except such duties as were lawful—such as were already required by the law.

I cannot, therefore, in any light in which I can view this feature of the case, entertain the slightest doubt as to the utter unavoidability of these words, especially as regards any effect to follow from them touching the validity of the bond.

If that be so, it was in nowise obligatory upon the government, in framing this declaration upon the bond, to put in any averment whatever touching the clerk, and the declaration contains nothing upon the subject.

Then, as regards the other terms of the bond, "that the clerk shall faithfully account for all moneys," etc., I am clear, upon reflection, under my view of the subject, that the entire liability covered by that language was covered by the more general terms which preceded, to-wit: "that the clerk should faithfully discharge the duties of his office," etc. Now, one of the first and most important of the duties of the clerk, undoubtedly, is to pay over moneys that may come into his hands, and which by law he is required to pay over.

Here is a particular specification of one of the details covered by that general proposition—clearly covered by it; and that particular specification, it seems to me, to use the language of several of the authorities upon the subject, is only expressing, in conformity with the law, more fully than in its terms it would be expressed, what the law prescribes; for what the law had prescribed in the same general terms the requirements of the bond fulfilled. They are no more comprehensive, they are no more onerous in any respect, as it seems to me, than if this specific requirement attached to it had not been contained in the bond at all.

I think, therefore, that there is no ground for the objection upon which the validity of the plea rests.

But it was very properly said that this demurrer to the plea, as do all demurrers under such circumstances, reaches back to the original pleading, i. e., the declaration, and subjects it to scrutiny as if it had been demurred to, and raises the question as to whether the declaration itself is a valid and proper one.

The declaration charged that large amounts of money having come into the clerk's hands "on account of the fees and

emoluments of said office, he *did not properly account therefor in his emolument returns, as required by law, and did neglect and refuse to pay into the treasury the sum,"* etc. It is said by counsel for defendants that the clerk is not required to pay over surplus funds in his hands until the attorney general has designated the depository in which they shall be placed; and that, therefore, until such designation is made he is not required to pay over. This is undoubtedly the case. But until the coming in of the proper reports, showing a surplus, the attorney general has nothing upon which to act; the report is the basis upon which he makes the designation. The breach of the bond consists in the failure to make these reports; and so the declaration charges. But it goes on to allege a failure to pay over. This may be treated as surplusage, or as an allegation of the damage resulting from the failure to make the proper reports.

I therefore think the declaration sufficient. It clearly alleges the failure to make the proper returns as a breach of the bond, and, as I have said, what follows may be treated as surplusage or as an allegation of the damages incurred. Of course, if there was no balance to turn over, the damages for failure to make returns would be merely nominal. If there were funds coming to the government their amount would be the measure of damages for a failure to make such returns as would have enabled the attorney general to make the proper designation.

But I would suggest to the district attorney that it might be well to amend the declaration so as to alone allege the failure to make the proper returns as the breach, and to refer to the amount which was in the clerk's hands and should have been turned over, only as showing the extent to which the government has been damnified by the failure to make returns.

I therefore sustain the demurrer to the answer.

Demurrer sustained.